IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD EL-MALIK CURTIS, | No. C 10-00358 SI |
| Plaintiff, | **FINAL PRETRIAL SCHEDULING ORDER** |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |

On March 17, 2015, the Court held a final pretrial conference in the above captioned matter, which is set for jury trial beginning August 10, 2015. All parties were represented by counsel. The following matters were resolved:

1. **Number of jurors and challenges**: There shall be a jury of 8 members. Each side shall have up to four peremptory challenges. (At the pretrial conference, trial time was estimated to be 10 days (2 trial weeks), and 1 additional juror appeared sufficient. Trial time has now been estimated at 16 days (4 trial weeks), so 2 additional jurors are warranted.)

2. **Voir dire**:

   **(A) Questionnaires**: The parties have requested and received permission to use a written questionnaire as part of voir dire. Fifty blank copies of the questionnaire, as approved by the Court, shall be provided by the parties to the jury officer no later than **2:00 p.m. on Thursday, August 6. The jury panel will complete the questionnaire on Friday, August 7, 2015. Counsel for the parties may retrieve the completed questionnaires by noon on August 7, 2015.** Counsel shall make 3 copies of

the completed questionnaires (one for each side, and one for the Court). Before 4:30 pm on August 7, 2015, the parties shall confer to determine whether any of the panel members could be excused by stipulation; if so, and if the Court agrees, then such jurors will be informed that they need not appear on Monday. All other panel members will be directed to return at 8:30 a.m. on Monday, August 10, 2015, for voir dire.

**(B) Voir dire:** The Court will conduct general voir dire, and counsel for each side shall have up to 30 minutes total to question the panel.

3. **Trial exhibits**: No later than August 6, 2015, the parties shall submit their trial exhibits, in binders with numbered tabs separating and identifying each exhibit. The court shall be provided with three sets (for the court, the file and the witness) and each side shall provide one set for the other side. To the extent that original documents are to be used as exhibits in the case, they should be included in the set of exhibits for the court.

4. **Timing of trial**: The parties have now estimated that the trial can be completed in 4 trial weeks (4 days per trial week). Based on this estimate, each side shall have 45 minutes for opening statements; each side shall have 25 hours total for presentation of evidence, which includes direct and cross-examination and presentation of all exhibits; and each side shall have up to 60 minutes for closing argument on liability and damages. Should there be a punitive damage phase after the initial verdict, each side will have one additional hour for presentation of evidence, and 30 minutes for further argument. This extended schedule, and the delayed start date for the trial, have been developed based on the parties' extensive witness lists. The parties are encouraged, however, to reexamine their trial plan (56 witnesses are currently listed) in an effort to streamline the trial.

5. **Trial schedule**: Jury trials are generally conducted Monday through Thursday. The trial day runs from 8:30 a.m. until 3:30 p.m., with a 15 minute break at 10:00 a.m., a 45 minute break at 12:00 noon and a 15 minute break at 2:00 p.m., all times approximate.

2

6. **Motions in limine**: The parties filed numerous motions in limine, as follows:

**Plaintiff's No. 1 - motion to exclude evidence of plaintiff's financial condition:** GRANTED. Plaintiff's financial condition is irrelevant to the question of liability. If defendants wish to introduce statements plaintiff made in his bankruptcy petition they may do so without referencing the nature of the proceeding. If defendants wish to inquire about plaintiff's other work as a realtor, they must seek Court approval with an offer of proof before doing so.

**Plaintiff's No. 2 - motion to exclude testimony of defendant's expert Dr. Rappaport:** DENIED. Dr. Rappaport's testimony is not relevant to the question of liability; it only concerns damages for emotional distress. Plaintiff has listed three treating mental health witnesses (two psychologists and a clinical social worker) to testify about plaintiff's "condition" and the "etiology of Mr. Curtis' condition, including job stressors of hostile work environment and retaliation." Accordingly, defendants were entitled to have a mental health expert examine plaintiff prior to trial, and are entitled to have their expert explain his observations concerning emotional distress. Dr. Rappaport is a board certified psychiatrist, and plaintiff does not dispute his credentials as an expert; rather, plaintiff complains, without explanation, that his testimony is "speculative" and "without scientific foundation." It is not clear, from reviewing Dr. Rappaport's report, why plaintiff finds it any more speculative or less scientific than plaintiff's anticipated mental health experts' opinions. Plaintiff fears that "behind the cloak of his academic qualifications, Dr. Rappaport will seek to offer testimony concerning Mr. Curtis' credibility." Such testimony will not be allowed, either by Dr. Rappaport or by plaintiff's mental health witnesses. With that exception, plaintiff's motion is denied.

**Defendants' No. 1 - motion to exclude testimony of plaintiff's expert Robert Demmons:** DENIED, without prejudice to objecting to specific testimony at time of trial. Demmons' testimony will be limited to the opinions provided in his report. His opinions regarding the inadequacy of the internal reporting and investigation procedures is relevant to plaintiff's claims. In particular, Demmons' report notes that (1) EEO investigators are often intimidated by and feel beholden to the very firefighters they are charged with investigating, (2) unlike in Oakland, the San Francisco Fire Department instituted a proactive anti-discrimination policy so as to take the onus off of victims to file complaints, (3) defendants failed to follow the policies and procedures that were in place in Oakland,

(4) based on his experience, the perpetrators of the "smeared honey" incident "would have been disciplined for harassment against a fellow firefighter." Additionally, his testimony on the team dynamics in fire stations–in particular, the importance of promoting trust and cohesiveness–may be relevant to the issue of whether the alleged hostile conditions were "severe and pervasive."

**Defendants' No. 2 - motion to exclude plaintiff's notes:** GRANTED; unopposed.

**Defendants' No. 3 - motion to exclude evidence of discriminatory acts by defendants after plaintiff left Station 1:** DENIED, without prejudice to specific objections to specific questions at time of trial. Evidence that individual defendants engaged in discriminatory conduct is relevant to showing the "pervasiveness of the conduct at issue." *See Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1018 (9th Cir. 2000) *aff'd in part, rev'd in part on other grounds*, and whether plaintiff was exposed to a hostile work environment "because of" his race. *See id.*
 (citing *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995)) ("This court has previously recognized that an employer's conduct tending to demonstrate its general hostility towards a group is both relevant and admissible.").

**Defendants' No. 4 - motion to exclude all evidence of history of discrimination before the relevant time period and at locations other than Station No. 1**: DENIED, for the same reasons as Def. Mot. No. 3, without prejudice to specific objections to specific questions at time of trial. In this, as in other areas, the Court will make efforts to assure the efficient trial of this case, by excluding evidence that is unduly time-consuming in light of its probative value. In particular, the probative value of evidence of discrimination from the 19th century is likely outweighed by its consumption of time, and tendency to be unduly prejudicial or confusing.

**Defendants' No. 5 - motion to bifurcate trial of punitive damages:** GRANTED; unopposed. The same jury will decide all issues, but the issue of punitive damages will be addressed only if the jury makes the appropriate initial finding.

**Defendants' No. 6 - motion to exclude evidence of other lawsuits and verdicts:** GRANTED. Lawsuits involving other individual defendants, and different circumstances would have limited probative value while creating a high risk of undue prejudice and excessive consumption of time. FRE 403. No such evidence will be allowed, absent specific offer of proof and permission of Court.

4

**Defendants' No. 7 - motion to exclude evidence not properly disclosed:** DENIED, without prejudice to specific rulings on specific evidence at time of trial.

**Defendants' No. 8 - motion to exclude testimony by plaintiff's expert Dr. Guillory:** DENIED. Dr. Guillory treated plaintiff, through Oakland's Employee Assistance referral, a total of six times in the fall of 2008 and fall of 2009. If he was properly disclosed, he may testify, as a treater, to what he observed, diagnosed and prescribed. If he did not prepare a report, he may not provide opinions beyond his observations of plaintiff during treatment.

**IT IS SO ORDERED.**

Dated: March 19, 2015

SUSAN ILLSTON
United States District Judge